IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **AEYSHA GORDON** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No:_____ |
| **EXPERIAN INFORMATION SOLUTIONS, INC.** | ) |
| Defendant. | ) |

### COMPLAINT

Plaintiff Aeysha Gordon, by and through counsel, brings this Complaint against Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1. Ms. Gordon had just moved into a new apartment, needed to establish internet services for her work and contacted Verizon to install and provide those services. The earliest appointment she could get that fit her schedule was on October 22, 2022. Ms. Gordon had to leave on travel that day, but she waited for the Verizon installer so that she would finally have internet when she returned back to her apartment. The technician claimed he was done and the two of them walked out of her apartment at the same time. What Ms. Gordon did not have was the time to try to connect her computer to the internet before she had to leave. The very same day that the installation was attempted by Verizon, the computer generated an initial bill. Verizon charged her $99 for the installation that did not work or connect her to FIOS and $59.99 for service from October 22 through November 22 with a credit for $10.00 making the total $148.99 due by November 16, 2022. When she returned back to her apartment about a week later and tried to

connect to the internet, she discovered that it did not work. Her initial point of contact was to the person that took her order and scheduled the installation (Will Smith). Mr. Smith thought it was just a technical error that could be resolved remotely, so he instructed Ms. Gordon to contact tech support and let them help get her on-line. Unfortunately, the first technician could not resolve the connection issue, so she called back and spoke to a second technician. The second tech was unsuccessful as well. Ms. Gordon needed internet and had to get this problem resolved. If Verizon could not connect her, she would need to find another provider that could. Ms. Gordon contacted Mr. Smith who apologized for the lack of connection and services and assured her that he would correct the billing and remove the charges for service that was never provided. In text messages to Mr. Smith she told him that because the service was not working she wanted to cancel the service. It appears that Mr. Smith did cancel the service because the following month she received a bill from Verizon for the past due balance of $148.99 with no new charges included. The November 22, 2022, bill did not include any current charges for internet, but it also did not include any credit for the services that were not provided. Originally Ms. Gordon relied upon Will Smith to adjust the bill to a zero balance and credit her back for the service that was never provided due to the lack of connection and installation. After she received the second Verizon bill in late November, she called and spoke to another representative who told her that Ms. Smith had not done what he said and had not zeroed out the bill. This Verizon representative refused to refund the charges for installation and internet service as Mr. Smith had promised until the notice of cancellation. However, because she canceled in the first month, she was entitled to a partial credit for the services after the date of cancellation and the account balance had to be corrected. The representative told her not to pay the November invoice and to wait for the adjusted and final balance after the credits were applied. Despite the fact that she thought she should not have to pay

for services that were never rendered or effectively installed, Ms. Gordon wanted to put an end to this and just paid the adjusted bill dated December 22, 2022 in full ($114.99). For reasons that remain unexplained, Verizon treated this account as a collection account and reported it as such the very same month that she finally got a corrected final invoice and paid it. Why under these facts it decided to report the account in collections is unclear, but at the same time it started reporting other data about the account that was obviously inaccurate. Verizon was reporting to Experian that the account was opened on September 30, 2022, which was almost a month before they even attempted installation and started billing. The date of first delinquency (when the account first went 30 days past due) was reported as October 2022, which was equally impossible since the initial service started on October 22nd and the first bill was prepared on that date. The date of major delinquency was reporting as July 2023 which is similarly absurd since she paid the account in full in January 2023 and the balance thereafter reported as $0. Verizon continued to report the account as a paid charge-off with $0 balance. Even though Ms. Gordon did not owe for service that Verizon never provided, after it finally provided her with the updated final bill dated December 22, 2022, she paid it 30 days later. The credit reporting for this account was extremely harmful and inaccurate. Ms. Gordon disputed it multiple times with Experian, but it failed to take any action to correct these obvious errors. Not only did Experian fail to take any corrective action, but it failed to add her consumer statement that explained why the Verizon account was so inaccurate and misleading. As the facts herein will expose, Experian has failed to take reasonable steps to ensure the accuracy of its data and recklessly ignores the investigative steps outlined in the FCRA. Accordingly, Ms. Gordon requests an award of actual damages, statutory damages, punitive damages, attorney's fees and costs based upon Experian's violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et seq.*

**Parties**

2. Plaintiff Aeysha Gordon is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because she is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Aeysha Gordon.

3. Defendant Experian Information Solutions, Inc. (hereinafter "Experian"), is a foreign limited liability company with a principal office address in California. Experian is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties. Experian regularly conducts these business activities in the Eastern District of Virginia by providing credit reports and other products to consumers and businesses in the Alexandria division of the Eastern District of Virginia. Experian maintains the office of a registered agent in the Eastern District of Virginia, and it regularly litigates cases in this district and division.

**Jurisdiction & Venue**

4. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681(p). Venue is proper in this jurisdiction by virtue of the business that Experian conducts in the Alexandria Division of the Eastern District of Virginia and based upon the maintenance of the office of a registered agent in the Eastern District of Virginia.

**Factual Allegations**

5. Aeysha Gordon is another victim of Experian's credit dispute reinvestigation process that does not comply with the stated statutory requirements of 15 U.S.C. §1681i, and this case involves Experian's continued reporting of an inaccurate and misleading Verizon collection account. The Verizon account at issue involved services that Verizon never actually provided, and

4

thereafter told her that it would correct the invoice and that it would not charge her. Unfortunately, Verizon failed to do as it said. Rather than agree to delete the entire bill, it told her that she should wait for an adjusted invoice that would remove the charges for service after she notified Verizon that it was not working. Ms. Gordon would inform Experian that its data was inaccurate and inconsistent in multiple dispute letters, but Experian would continue to report the information as accurate and fail to follow the steps of reinvestigation required by the Fair Credit Reporting Act.

6.   Ms. Gordon had recently moved into a new apartment and needed to secure an internet connection and services. The installation technician had to reschedule the original installation date and wanted to come to her apartment on October 22, 2022 to make the connection and set up the service. Ms. Gordon had a trip planned and needed to leave that day, but she also needed immediate access to the internet, so she agreed to have the technician come just before she had to leave. The service technician performed his work and claimed that services were installed, but Ms. Gordon did not have the time to check or verify the internet connection and walked out the apartment door with the technician. When she returned from her trip, she tried to connect her computer to the internet and discovered that the services did not work.

7.   She contacted her Verizon representative on multiple occasions regarding the failed installation, and she exchanged text messages with the Verizon representative, Will Smith. Mr. Smith directed her to call Verizon's troubleshooting number and see if they could remedy the problem remotely. Two attempts were made without success. Ms. Gordon needed immediate connection to the internet, and it became clear that Verizon was unable to provide that. Because installation failed, Will Smith promised Ms. Gordon that Verizon would credit back any fees and charges for services that were never provided and cancel out the account. Unfortunately for Ms. Gordon, Mr. Smith dropped the ball and failed to credit back the account.

8.      Ms. Gordon received an invoice from Verizon dated October 22, 2022 (the date of installation) for the first month's service and the installation fee for the home internet services that were never installed properly.  Notably, Experian's data would initially be inaccurate because it reported the account open as of September 30, 2022, which was almost a month before Verizon even attempted to install the services.  Ms. Gordon contacted Verizon and told the representative what had happened with the failed installation and what Will Smith had told her.  She disputed the charges on this invoice, and she believed that Verizon would honor its word to not charge her for services that it never provided.

9.      Verizon next invoiced Ms. Gordon on November 22, 2022.  It clearly knew that the service had been canceled because that bill did not include any new charges for services after the first month.  However, Verizon continued to invoice charges for the first month services and installation that Verizon promised would not be charged.  After reviewing this invoice, Ms. Gordon contacted Verizon and learned that the account did not reflect the proper cancellations promised by Mr. Smith.  The new Verizon representative stated that there was no record that Mr. Smith had taken any action on her behalf.  This representative agreed to credit back the portion of the monthly charges that were not due after she had returned from her trip and notified Verizon that the service was not working.  Because she was making changes to the first and final bill, the Verizon representative told Ms. Gordon not to pay anything yet and wait for the reduced and adjusted bill and that she would receive a corrected invoice in one or two billing cycles.

10.     On or about December 22, 2022, Verizon provided the third invoice which finally provided a $34.00 credit and a reduced balance of $114.99.  There were no additional fees added to the account, and the invoice did not reflect that the account was late.

11.     Ms. Gordon disputed that she owed Verizon anything because the installation failed and it never provided her with any services, but she elected to pay the bill of $114.99 on January 22, 2022, which was 30 days after Verizon provided the final bill.  Accordingly, Ms. Gordon paid this disputed amount in full and was never even 30 days late on the Verizon account.

12.     Despite the fact that invoices were inaccurate from the outset based upon the failed installation and terminated service, and it took Verizon a few months and multiple phone calls to correct these issues, Verizon claimed to have charged off the account during that period.  The Verizon representatives that Ms. Gordon contacted about the billing disputes told her not to pay until the matter could be finally resolved.  She waited as instructed, paid under protest and the matter should have ended.

13.     To add to its installation and billing failures, Verizon started falsely reporting the account status to Experian.  Verizon, like other utilities, do not credit report on active accounts, but as soon as they charge it off or send it to collections then it starts reporting the negative data.  Setting aside the big picture error that this was a charged off account that Verizon claimed to have sent to collections while the parties were still trying to resolve the initial installation and billing errors, Verizon reported to Experian that the account opened on September 30, 2022.  Verizon issued the first bill for service and installation just as soon as the installer claimed that he had set up service on October 22, 2022.

14.     The next blatant error concerned the date of first delinquency.  The first bill which included charges for the upcoming 30 days that had yet to accrue, was issued on October 22, 2022 and that bill had a due date of November 16, 2022.  Experian started reporting the date of first delinquency as October 2022.  That, of course, was impossible since the installation had not

occurred until October 22, 2022 the initial invoice was dated that day and payment was not due until November 16, 2022.

15. Because Experian reported inaccurate and misleading information, Ms. Gordon began efforts to dispute with Experian the inaccurate and inconsistent information.

16. On or about February 3, 2023, Ms. Gordon disputed the inaccurate and misleading Verizon account with Experian by sending it a detailed credit dispute letter. Ms. Gordon explained that Verizon could never get the service to work at her location. She spoke to a Verizon representative Will Smith, who told Ms. Gordon that she would not have to pay any bill because Verizon was unable to get the service to work at her location. Unfortunately for Ms. Gordon, Verizon had already issued a bill for the services that it never provided to her. Ms. Gordon reached out to Will Smith on multiple occasions, but he never would respond in a meaningful fashion. As detailed in the letter, she contacted Verizon multiple times in November 2023. After receiving a second bill from Verizon, Ms. Gordon contacted Verizon, and she spoke to a different representative who told Ms. Gordon that Mr. Smith did not take care of the problem with the initial bill and that he never cancelled the service even though Verizon never provided a workable service. This representative cancelled the service, but refused to account for the fact that Verizon never provided a product to Ms. Gordon that worked. On December 22, 2022, Verizon issued a bill for $114 for services that never worked and that it promised Ms. Gordon she would not have to pay. Ms. Godon paid this bill to try and put this problem behind her. Unfortunately, Verizon credit reported that it sent the bill to collections.

17. On March 23, 2023, Experian provided the results of the reinvestigation of Ms. Gordon's dispute. Experian reported that the date opened for the account was September 2022 but that the account was first reported in January 2023. Experian would have known that the payment

was made the date that the account was first credit reported, and it would have known from its own data that the date opened was allegedly September 2022, so there was a significant discrepancy in the account level data. Experian continued to report the account as collection as of January 2023.

18.     On or about April 13, 2023, Ms. Gordon sent a second credit dispute letter to Experian to dispute the inaccurate and misleading Verizon collection that reported on her credit file. Ms. Gordon once again explained the circumstances that the account never should have been initiated in the first place because Verizon never provided her with working services and that she paid the bogus charges in an effort to protect her name and credit, which as it turned out, failed to protect her credit rating. She detailed how the account was not fraudulent, but that Verizon's representative misled her on multiple occasions and said that Verizon would close the account with no charges. Ms. Gordon also asked about what Experian did to investigate her previous dispute and asked that Experian add a consumer dispute statement to her credit file.

19.     On May 15, 2023, Experian issued the results of the reinvestigation, and it refused to delete the account from Ms. Gordon's Experian credit file despite the information provided in her letter and how the information provided in the letter corroborated her dispute when that information was taken in the context of the data that Experian already possessed. Experian reported that the account was opened in September 2022 and first reported on January 2023 with a collection of January 2023 and a recent payment of $114 as of January 2023. This information was demonstrably inaccurate because the account had just been opened and there was no report of the payment ever being late. The same month that Verizon claimed that the account was in collection was the very same month that the payment had been tendered and the account paid in full. Experian could see from its own records and data that Verizon improperly reported the account in collections just when the account was paid in full. Experian should have deleted the

9

notation that the account was in collections because it never could verify the information reported when taken in context to the information provided by Ms. Gordon and the data maintained by Experian. Experian had an independent duty to review and consider the information provided by Ms. Gordon in the context of the data that Experian maintained in its records. No reasonable reinvestigation would have resulted in the verification of the Verizon data that Experian reported about the account.

20.  On June 9, 2023, SoFi Bank sent Ms. Gordon a credit denial that stated it was unable to approve her credit application, and it identified Experian as a credit reporting agency to contact regarding the credit denial. The first two reasons for credit denial stated in the letter were for "serious delinquency" and "time since delinquency is too recent or unknown." This was very frustrating for Ms. Gordon because she had maintained an exemplary credit history prior to the inaccurate Verizon collection account appearing on her Experian credit file.

21.  On June 22, 2023, Ms. Gordon send a third credit dispute to Experian in an effort to have it delete the misleading Verizon collection account. Ms. Gordon's third dispute noted that the Experian data said the account was opened September 30, 2022, and immediately went into default, but this was not factually accurate for the reasons stated in her dispute letter because Verizon was never at her building until October 22, 2022 to even attempt to install the services. Ms. Gordon also discussed how the first invoice that she received was dated October 22, 2022. In case there were any doubts about her representations as to the history of the account, Ms. Gordon attached the Verizon invoices she received since the start of the account. Those Verizon invoices demonstrably proved that: 1) the account was not opened in September 2022; 2) that the first invoice was dated October 22, 2022 and disclosed the date of installation as the same day; 3) that the date of first delinquency could not have been in October 2022 days after Verizon sent out the

initial invoice; 4) that Verizon stopped billing for service a few weeks after the installation charge; 5) that Verizon issued a credit for the services billed in the initial statement because the account had been closed; and 6) and that after she finally received the adjusted invoice in December 2022 that she paid it. She also provided copies of the text messages between her and Verizon's representative Will Smith. Mr. Smith had told Ms. Gordon he would credit back the fees and that nothing would be owed. Ms. Gordon concluded the dispute letter by once again asking that Experian add a consumer dispute statement to her credit file.

22. On July 2, 2022, Experian sent Ms. Gordon a consumer file disclosure. Nothing had changed with regard to its credit reporting of the Verizon account. Based upon the information contained in the report, it may be that Experian did not even process the third dispute with the supporting documents because the trade history does not indicate that a reinvestigation occurred in June or July 2023. Additional discovery is necessary as to what if anything Experian did with regards to the dispute in June 2023. In addition, Experian never added the consumer dispute statement that Ms. Gordin requested Experian to add to her credit file.

23. Given the egregious manner that Experian handled Ms. Gordon's credit disputes, punitive damages are necessary to deter Experian and force it to change its reinvestigation practices. Among the factors that support substantial punitive damages is that fact that Experian takes in immense revenue as a credit reporting agency, yet it refuses to allocate reasonable resources to process consumer disputes to ensure maximum possibly accuracy of its data. According to Experian's website, the Consumer Services division contributes 20% to its global revenue. In addition, Experian's website states that it had operating revenue of $4,861,000,000 in 2019. *See* www.experianplc.com/investors/key-financial-data/. Experian earns massive profits processing and selling consumer data, but it refuses to take consumer accuracy disputes seriously

as required by §1681i of the FCRA and instead outsources those duties to poorly trained and supervised processors to save money and further increase corporate profits.

### COUNT I
### Fair Credit Reporting Act
### 15 U.S.C. §1681i

24. Plaintiff incorporates paragraphs one (1) to twenty-three (23) as if fully stated herein.

25. Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Experian is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681i by failing to comply with the enumerated statutory provisions and mandatory steps when Ms. Gordon disputed the accounts identified in her credit dispute letters.

26. Experian's reinvestigation procedures do not comply with the stated statutory requirements of 15 U.S.C. §1681i(a)(1) through §1681i(a)(5). §1681i(a)(1)(A) provides that upon notice of the dispute that Experian is obligated to: "conduct a reasonable reinvestigation to determine whether the dispute information is inaccurate." Next, §1681i(a)(2) obligates Experian to: "provide notification of the dispute to any person who provided any item of information in dispute." §1681i(a)(4) details the scope of Experian's reinvestigation under paragraph (1) and makes clear that Experian Information Solutions, Inc. "shall review and consider all relevant information submitted by the consumer…with respect to such disputed information." Finally, §1681i(a)(5) provides that after Experian has completed the forgoing steps and reinvestigation that if: "an item of information is found to be inaccurate or incomplete or cannot be verified," Experian must delete or modify the information.

27. Experian violated 15 U.S.C. §1681i(a)(1) by its conduct related to Ms. Gordon's disputes that it received as identified in the factual averments because it did not conduct a reasonable reinvestigation of the disputes that Ms. Gordon submitted to Experian. At best, a third party issued an ACDV on Experian's behalf, which Experian knows is not a proper reinvestigation of a consumer dispute. "[A] 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute." *Cushman v. Trans Union Corporation*, 115 F.3d 220, 225 (3d Cir. 1997).

28. Experian also violated 15 U.S.C. §1681i(a)(4) after receiving Ms. Gordon's dispute letters because Experian lacks any evidence that it reviewed and considered the dispute letters including the representations regarding the payment history and the underlying account transaction. Because Experian uses outsourced third-party processors located in Chile and other countries, Experian incentivizes low-cost review at the expense of detailed review and consideration of the specifics of the disputes.

29. The FCRA requires that in conducting its reinvestigation under 15 U.S.C. §1681i(a)(1)(A) that a credit reporting agency must conduct the reinvestigation after receiving the consumer's credit dispute letter and unless it is able to verify said information Experian must delete the disputed account from the credit file as stated in 15 U.S.C. §1681i(a)(5)(A):

> In general If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or **cannot be verified**, the consumer reporting agency shall- (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer. 15 U.S.C. §1681i(a)(5)(A) (emphasis added)

30. According to Black's Law Dictionary, the ordinary meaning of verify is, "to prove to be true; to confirm or establish the truth or truthfulness; to authenticate." Based upon the

documents provided Ms. Gordon, Experian knew that there was a problem with the data on Ms. Gordon's credit file because Experian reported that the account was opened and had a major date of first delinquency prior to the date that Verizon even attempted to install the services. Rather than undertake a more reasonable and detailed reinvestigation that included a proper review and consideration of the Verizon invoices, text message chain, and dispute letters, Experian contracted for an outsourced third-party processor to issue a coded dispute with Experian's computers "verifying" the information with no meaningful reinvestigation after receiving the ACDV response from the furnisher of the information. This procedure is known by Experian to have flaws that result in credit report inaccuracies when employed in scenarios such as the facts identified herein. Experian cannot "verify" the accuracy of the information when there is so much information that it must ignore in order to parrot the information that Verizon reported to it about the account.

31. Experian negligently and recklessly implemented a system with a total disregard for the requirements of §1681i(a)(5). Rather than allow these processors to review and consider the consumer's dispute package together with the furnisher's ACDV response and make the required determination of §1681i(a)(5)(A), Experian automates that process and simply sends the ACDV response to its computer for automated updating and processing. As a result, Experian fails to conduct the required determination mandated by §1681i(a)(5)(A) and instead simply parrots whatever response the furnisher provides back to it in the ACDV exchange without truly verifying the information under the plain meaning of the word verify.

32. The facts of Ms. Gordon's case demonstrate how reckless this process of sending ACDV responses to automated processing and skipping the evaluation requirement of 1681i(a)(5) truly is. Only by reviewing Ms. Gordin's dispute letter with the attachments, considering what she had to say and comparing it to the documents, information and records in Experian's possession

14

that it could make a reasonable determination about the accuracy of the trade line. Moreover, it is reasonably believed that the computer is not programed to do the necessary tasks and merely parrots whatever the ACDV response states.

33. Based upon information and belief, Experian's automated processing has no programing or ability that allows it to read and consider the dispute letter and attachments provided by the consumer.

34. Based upon information and belief Experian's automated processing has no programing or ability to scan the consumer's dispute letter, identify any request for a consumer statement and then add that statement to the consumer's Experian credit file data.

35. If Experian determined that the information was too difficult to verify for purposes of the dispute, the proper response is to delete the information as unverifiable. Instead, Experian defaults to the furnisher's ACDV response no matter how ridiculous or inconsistent as the facts of this case where the documents provided by Ms. Gordon proved that account could not have been opened and defaulted prior to any services or payments ever having occurred if Experian's just compared its own data to the information provided in the credit disputes.

36. Ms. Gordon has no record of receiving a response to her June 2022 credit dispute letter to Experian. Accordingly, Experian violated §1681i(a)(6) by not providing her written notice of the results of the reinvestigation of that dispute. Discovery is necessary as to whether Experian even issued an ACDV to Verizon in accordance with the FCRA after receiving the June 2022 credit dispute.

37. Experian also recklessly and negligently failed to comply with the requirements of §1681i(b) and (c) because Ms. Gordon requested her consumer dispute statement to be added and included in her Experian credit file, and Experian failed to do that on two separate occasions.

38. Based upon information and belief, Experian knows that if it sends an ACDV response to auto processing that the system is not designed to add the consumer statement.

39. Experian recklessly disregarded its obligations under §1681i(b) & (c), by failing to ensure that the disputes were properly processed by someone that had the ability to add her consumer statements.

40. Ms. Gordon suffered actual damages including time she spent disputing and addressing the inaccurate credit reporting, improper denial of access to credit, inability to use her good credit, as well as emotional distress damages with attendant physical manifestations. In addition, punitive damages are necessary based upon Experian's reckless disregard for reviewing information submitted by consumers and issuing ACDVs.

## COUNT II
### Fair Credit Reporting Act
### 15 U.S.C. §1681e(b)

41. Plaintiff incorporates paragraphs one (1) to forty (40) as if fully stated herein.

42. Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Experian is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

43. Experian willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about Ms. Gordon when it provided a credit report to SoFi Bank on or about June 9, 2023 and FFAB on July 27, 2023. Discovery is necessary related to additional occasions that Experian issued an inaccurate credit report.

44. Experian's publishing of the inaccurate information was a substantial factor in the stress and strain from knowing that Ms. Gordon had fallen from a credit customer who could get the best rates available before the incident with Verizon to one who then got the highest available rates, being denied outright, or being forced to suffer through higher degrees of application review and scrutiny because of the inaccurate Verizon collection account.

45. Experian had a duty to prepare Metric Reports that track the accuracy of furnisher data to ensure that it is complying with its obligation to ensure the maximum possible accuracy of the data that it is reporting on consumers like Ms. Gordon.

46. Experian failed in its duty to investigate the accuracy of the data that Verizon was reporting to it.

47. Experian could see from the data related to this trade line that Verizon had inaccurately and improperly reported this new and troubled account as having been sent to collections when it was actually paid after Verizon finally corrected its inaccurate billing.

48. Ms. Gordon suffered actual damages including time spent addressing the problem, improper denial of access to credit, inability to obtain credit, as well as emotional distress damages with attendant physical manifestations. In addition, punitive damages are necessary based upon Experian's reckless disregard for reviewing information submitted by consumers and issuing ACDVs.

49. Punitive damages are necessary because Experian has implemented a system and process that it knows results with inaccurate credit reports being sold to furnishers because Experian fails to invest the resources into enacting procedures to protect consumers. Experian has implemented procedures to allow inaccurate data to remain in its system that cannot be verified if

reinvestigated properly. Only punitive damages can curb this type of conduct that operates in reckless disregard for accurate credit reports.

## Prayer for Relief

Wherefore, the Plaintiff prays that the Court award the following relief:

a) Actual damages based upon Defendant's violations of the FCRA;

b) statutory damages against Defendant's based upon violations of the FCRA;

c) punitive damages based upon the violations of the FCRA

d) costs and reasonable attorneys' fees incurred by the Plaintiff;

e) prejudgment interest

f) all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted,
Aeysha Gordon

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11862 Sunrise Valley Dr. Suite 201
Reston, Virginia 20191
(571) 313-0412
Fax:(571) 313-0582